**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| | * | |
| **NATIONAL ELECTRICAL** | * | |
| **BENEFIT FUND,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Action No.: PWG-14-0140** |
| **v.** | * | |
| | * | |
| **LANDERS ENTERPRISES, LLC,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | ****** | |

## REPORT AND RECOMMENDATION

National Electrical Benefit Fund (the "NEBF" or "Plaintiff"), through its Trustees

Salvatore J. Chilia and D. R. Borden, Jr., brought this action under the Employee Retirement

Income Security Act of 1974 ("ERISA") to recover delinquent pension fund contributions and

related relief from Landers Enterprises, LLC ("Defendant"), an employer Plaintiff alleges is

obligated to make pension fund contributions to the NEBF on behalf of its participating

employees. *See* 29 U.S.C. § 1001. This Report and Recommendation addresses Plaintiff's

Motion for Default Judgment (the "Motion") (ECF No. 6) arising from the Clerk's entry of

default against Defendant on March 5, 2014 (ECF No. 7). Defendant has not filed a response

and the time for doing so has passed. *See* Local Rule 105.2(a) (D. Md.). Pursuant to 28 U.S.C. §

636 and Local Rules 301 and 302, the Honorable Paul W. Grimm referred this matter to me for

making a Report and Recommendation concerning default judgment and/or damages. For the

reasons stated herein, I recommend the Court GRANT the Motion and award Plaintiff damages

and associated relief as enumerated below.

I.      **Factual and Procedural Background**

Plaintiff filed a Complaint on January 17, 2014 under ERISA, 29 U.S.C. § 1001, alleging

Defendant is bound by the provisions of its collective bargaining agreements and the NEBF plan

documents.  Compl. ¶ 1 (ECF No. 1).  The NEBF qualifies as a multiemployer benefit plan under

section 2 of ERISA, 29 U.S.C. § 1002, and was established pursuant to an agreement entered

into between the International Brotherhood of Electrical Workers ("IBEW") and the National

Electrical Contractors Association ("NECA").  Loughran Aff. ¶ 3 (ECF No. 6–2).  Defendant is

an employer that agreed to contribute to the NEBF on behalf of its employees and in consonance

with its collective bargaining agreements, which includes both the IBEW Local Union 613 Labor

Agreement ("Labor Agreement"), Loughran Aff.  ¶ 4, Ex. 1 (ECF No. 6–3), and the NEBF's

Employees Benefit Agreement ("Trust Agreement"), Loughran Aff. ¶ 5, Ex. 2 (ECF No. 6–4).

Under the terms of the Trust Agreement and section 502 of ERISA, 29 U.S.C. § 1132, the

NEBF may collect interest on delinquent contributions if an employer fails to contribute, *see*

Loughran Aff. ¶ 6, Ex. 2, § 6.9.  The interest rate for delinquent contributions is 10% per annum

compounded monthly and for liquidated damages is 20% of the delinquent contributions, audit

fees, attorney's fees, and costs incurred in collecting delinquent contributions.  Loughran Aff. ¶

6, Ex. 2, § 6.9.  The Trust Agreement also requires Defendant to produce its payroll records

when the NEBF demands them for the purpose of determining whether Defendant is in

compliance with its contribution obligations.  Loughran Aff. ¶ 7, Ex. 2, § 6.7.

Defendant employed individuals covered by the Labor Agreement in 2010, 2011, and

2012.  *See* Loughran Aff.  Ex. 1, Ex. 2.  Plaintiff served Defendant on January 17, 2014, alleging

Defendant breached the Labor Agreement by failing to pay the contribution amounts due to the

NEBF and breached the Trust Agreement by failing to provide sufficient records so that the

NEBF can conduct an audit.  Compl. ¶ 1; Loughran Aff. ¶ 7–9.  Defendant did not file an

Answer or otherwise defend against allegations in the Complaint.  Loughran Aff. ¶ 4.  Plaintiff moved for Entry of Default (ECF No. 5) on February 27, 2014, and the Clerk entered an Order of Default (ECF No. 7) on March 5, 2014.

## II.    Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments.  Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the Court may enter a default judgment against the defendant pursuant to Rule 55(b)(2).  In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability.  *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780–81 (4th Cir. 2001).  However, "liability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability."  *Id.*  The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but finds that default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If Plaintiff establishes liability, the Court then turns to the determination of damages.  *See Ryan,* 253 F.3d at 780–81.  The Court must make an independent determination regarding damages and cannot accept as true factual allegations.  *See Lawbaugh*, 359 F. Supp. 2d at 422.  Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so. *See, e.g.*, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought); *DirecTV, Inc. v. Yancey*, No. Civ. A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that a hearing was "not required to enter default judgment" because plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").  The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. *See Monge*, 751 F. Supp. 2d at 794–95.

## III.  Discussion

More than six months have passed since Plaintiff served the Complaint on Defendant, yet Defendant has failed to plead or otherwise assert a defense by filing a motion.  Therefore, the Court deems all of Plaintiff's factual allegations in the Complaint not pertaining to damages admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780.  Plaintiff moved for both an entry of default and a default judgment on February 27, 2014, and Defendant still did not respond.  It is within the Court's discretion to grant default judgment when a defendant is unresponsive. *See* Fed. R. Civ. P. 55(a)–(b); *see also Park Co. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *see*

*also Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment was appropriate because defendant was "unresponsive for more than a year" after denial of his motion to dismiss, even though he was properly served with plaintiff's motions for entry of default and default judgment).

For the reasons stated below, it is my recommendation that Plaintiff is entitled to default judgment. In determining damages, I find that no evidentiary hearing is necessary and instead rely on the affidavits and other evidence of record, such as copies of the collective bargaining agreements and printouts of payroll records, to determine the appropriate sum.

## A.  Default Judgment

In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability.  *See Ryan,* 253 F.3d at 780–81.  Nevertheless, the Court must determine "whether the well-pleaded allegations . . . support the relief sought in this action."  *Id.* at 780.  Plaintiff's allegations of unpaid contributions support its cause of action under ERISA and the collective bargaining agreements.  Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained
> agreement shall, to the extent not inconsistent with law, make such contributions
> in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Moreover, section 502(g) of ERISA states that in an action under section 515 of ERISA, in which judgment is awarded in favor of the pension plan, a court shall award: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the unpaid contributions, or . . . (ii) liquidated damages provided for under the plan not in excess of 20 percent" of the unpaid contributions; (4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).

The Supreme Court has found that these sections of ERISA "provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Laborers' Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). The Fourth Circuit has likewise found that in an action based on section 515 of ERISA, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.,* 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997)).

Plaintiff shows that, under the Trust Agreement, Defendant agreed to make full and timely payment on a monthly basis to the NEBF. Loughran Aff. ¶ 5–6, Ex. 2, § 6.9. Defendant also agreed to pay liquidated damages, interest, audit costs, and all costs of litigation expended by the NEBF to collect delinquent contributions. Loughran Aff. Ex. 2, § 6.9. In support of the claim that Defendant violated the Trust Agreement, Plaintiff filed the affidavit of Lauren Loughran, the Director of Audit and Delinquencies for the NEBF. Loughran Aff. ¶ 2. Loughran states that Defendant owes $6,191.16 in unpaid contributions for 2010 and 2012, as well as interest on those unpaid contributions, liquidated damages, audit costs, and legal costs and fees. *Id.* ¶ 8. Loughran further states that Defendant has failed to produce payment records for 2011 sufficient to conduct an audit to determine the amount in unpaid contributions Defendant owes. *Id.* Therefore, Plaintiff's well-pleaded factual allegations support the relief requested and it is my recommendation that the Court grant Plaintiff's Motion for Default Judgment.

### B. Damages and Injunctive Relief

In addition to an award of monetary damages, the court has discretionary authority under ERISA to grant injunctive relief when doing so is necessary to protect the rights of fund

participants and beneficiaries. *Trustees of Washington Area Carpenters' Pension & Ret. Fund v. Mergentime Corp.,* 743 F. Supp. 422, 428 (D. Md. 1990); *see Laborer's Fringe Benefit Funds – Detroit and Vicinity v. Northwest Concrete & Construction, Inc.,* 640 F.2d 1350 (6th Cir. 1981); *see* 29 U.S.C. § 1132(a)(3).  A plaintiff requesting injunctive relief must show that he is in need of injunctive or "other appropriate equitable relief" to remedy the breach.  *Phillips v. Brink's Co.,* 632 F. Supp. 2d 563, 575 (W.D. Va. 2009).

Plaintiff seeks damages pursuant to section 502(g) of ERISA and asserts that Defendant owes $6,191.16 in delinquent contributions; interest calculated at the rate of 10% per annum on the amount owed to the NEBF, totaling in the amount of  $3,278.96; liquidated damages calculated as 20% of the delinquency, totaling $6,053.67; audit fees in the amount of $703.83; attorney's fees and costs in the amount of $1,113.90, plus any additional fees and costs incurred by the NEBF in connection with the enforcement of a judgment; and an order requiring Defendant to produce its monthly payroll records for the time period of January 2011 through December 2011 for the purpose of  an audit.  Plaintiff further asserts that Defendant owes an undetermined amount in delinquent contributions for 2011, which is unsettled because Defendant failed to provide sufficient records to conduct an audit.  *See* 29 U.S.C. § 1132(g)(2).

In support of its request for unpaid contributions, interest, liquidated damages, and audit costs, Plaintiff submitted the declaration of Loughran, as well as the Labor Agreement and the Trust Agreement.  *See* Loughran Aff.  ¶ 4, Ex. 1, Ex. 2.  In support of her request for reasonable attorneys' fees and costs, Plaintiff's counsel Jennifer Bush Hawkins submitted an affidavit.  Hawkins Aff. ¶ 1 (ECF No. 6-1).  I accept the sworn representations of both Loughran and Hawkin as to the contributions and attorney's fees owed by Defendant and find there is adequate evidence with respect to damages to make a hearing unnecessary.  *See Monge*, 751 F. Supp. 2d at 794–96.  For the reasons enumerated below and as of the date of the Motion, I recommend the

Court award judgment in favor of Plaintiff in the total amount of $12,505.68, order Defendant to turn over its records for 2011 for the purpose of conducting an audit, and retain jurisdiction over this matter for the purpose of determining whether Plaintiff is due any amounts for 2011 after the audit is complete.

### a)   Unpaid Contributions

Loughran confirms that she has personal knowledge of the Labor Agreement at issue in this case, and that Defendant owes $6,191.16 in unpaid contributions 2010 and 2012.  Loughran Aff. ¶¶ 2, 10.  After reviewing the evidence of record, I recommend the Court award Plaintiff $6,191.16 in unpaid contributions.

### b)   Accrued Interest

Plaintiff is entitled to interest on any unpaid contributions because Defendant failed to make its monthly contributions to the NEBF.  Section 502 of ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under the Internal Revenue Code."  29 U.S.C. § 1132(g)(2).  The Trust Agreement indicates that interest on delinquent payments is calculated at a rate of 10% per annum compounded monthly throughout the period of delinquency.  *See* Loughran Aff. Ex. 2, § 6.9.3.  Applying this interest rate, Plaintiff submits that Defendant owes $3,278.96 in interest on the outstanding and late-paid 2010 and 2012 contributions.  After reviewing the evidence of record, I recommend the Court award Plaintiff $3,278.96 in interest.

### c)   Liquidated Damages

Plaintiff is entitled to liquidated damages because Defendant failed to make its monthly contributions to the NEBF.  Section 6.9.2 of the Trust Agreement indicates that liquidated damages should be an amount up to 20% of the amount found delinquent.  *See* Loughran Aff. Ex. 2, § 6.9.2.  Defendant's total amount of delinquent contributions, which it accrued in 2010, is

8

$6,191.16.[1]  Loughran Aff. ¶ 10.  Plaintiff alleges that 20% of the $6,191.16 in delinquent

contributions equals $6,053.67.  However, this number is over 95% of the delinquent

contributions owed; 20% of the delinquent contributions equals $1,238.23.  I recommend the

Court award Plaintiff $1,238.23 in liquidated damages.

> d)  *Audit Costs*

The Trust Agreement provides for recovery of audit costs in the event that an audit of an

employer's payroll books and records reveals a delinquency in payments to the

NEBF.  *See* Loughran Aff. Ex. 2, § 6.9.  In 2010 and 2012, the NEBF conducted audits of

Defendant's books and records and determined that there was a delinquency in payment.

However, Defendant failed to produce records for 2011 sufficient for the NEBF to conduct an

audit for that year.  *See* Loughran Aff. ¶ 11.  Plaintiff submits that it is owed $703.83—the

amount the NEBF spent in conducting the audits.  *Id.* ¶ 17.  After reviewing the evidence on

record, I recommend the Court award Plaintiff $703.83 in audit costs.

> e)  *Attorneys' Fees and Costs*

The Trust Agreement also provides for payment of attorneys' fees and costs incurred in

the NEBF's collection of a delinquency, *see* Loughran Aff. Ex. 2, § 6.9, and Plaintiff's counsel

requests reimbursement of $1,113.90 in attorneys' fees and costs in this matter, *see* Hawkins Aff.

¶ 14.  In an ERISA action, a district court may award costs and reasonable attorneys' fees to

either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative

degree of success on the merits."  *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir.

2010).  In addition, under Rule 37 of the Federal Rules of Civil Procedure, the Court must

---

[1] Plaintiff also asserts that Defendant accrued $66.04 in delinquent contributions for 2012, and that despite Defendant having subsequently paid the $66.04, Defendant has not paid interest and liquidated damages on the $66.04.  Loughran Aff. ¶ 12.  However, without additional information or records regarding date of payment, the Court cannot verify the calculations or address any deficiencies resulting from the $66.04 in delinquent contributions.

require the party "whose conduct necessitated the [discovery] motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable attorneys' fees."  Fed. R. Civ. P. 37(a)(5)(A).

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee.  The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see Robinson v. Equifax Info. Servs.*, *LLC*, 560 F.3d 235, 243 (4th Cir. 2009).  The Court has endorsed a list of twelve factors, first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, which aid a court in determining a reasonable fee.  488 F.2d 714 (5th Cir. 1974).  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717–19.  The Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount.  *Robinson v. Equifax Info. Servs.,* 560 F.3d 235, 243–44 (4th Cir. 2009).

A party seeking a fee award "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which she seeks an award.  *See Robinson*, 560 F.3d at 244; *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).  However, failing to provide affidavits from independent counsel is not fatal, for the Court may rely on its own knowledge of the market in determining reasonable fees for that community.  The Local Rules provide Rules and Guidelines for Determining Lodestar Attorneys' Fees in Certain

Cases ("Local Guidelines") for determining an attorney's reasonably hourly rate in Maryland.

These rates are as follows:

    a. Lawyers admitted to the bar for less than five (5) years: $150–190.
    b. Lawyers admitted to the bar for five (5) to eight (8) years: $165–250.
    c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225–300.
    d. Lawyers admitted to the bar for fifteen (15) years or more: $275–400.
    e. Paralegals and law clerks: $95–115.

Local Rule App. B, 3 (D. Md.).[2]

Plaintiff's counsel, a principle of the law firm Potts-Dupre, Hawkins & Kramer, filed a declaration to support her contention that she incurred $1,113.90 in attorneys' fees and costs as a result of her efforts to collect unpaid contributions from Defendant. *See* Hawkins Aff. ¶ 1. *Johnson* factors one and nine are most persuasive in evaluating Plaintiff's request for attorneys' fees and costs. Factor one is relevant because Plaintiff's counsel spent time and effort preparing and otherwise prosecuting this motion. Factor nine is relevant because a more experienced attorney is expected to perform more efficiently. *See Int'l Ass'n of Machinists & Aerospace Workers v. Wener-Masuda*, 390 F. Supp. 2d 479, 491 (D. Md. 2005). Plaintiff's counsel billed at an hourly rate of $348.00 and the paralegal billed at an hourly rate of $127.00. Ms. Hawkins Aff. ¶ 14. Plaintiff's counsel provided no information indicating the experience level of the attorneys or paralegals. However, an internet search reveals that Ms. Hawkins was admitted to the Maryland State Bar in 1997 and that she is a principal of the firm in which she works. The Local Guidelines advise that a reasonable hourly rate for an attorney admitted to the bar for fifteen or more years is $275 to $400; therefore, Ms. Hawkins's rate of $348.00 per hour is reasonable. *See* Local Rule App. B, 3(d). Additionally, the Local Guidelines advise that a reasonable hourly rate for a paralegal is somewhere between $95 and $115. *Id.* at 3(e). The

---

[2] The Local Guidelines for attorneys' fees were modified in July 2014. The modified hourly rates are not applicable to this motion.

paralegal's hourly rate of $127 exceeds the range of reasonable rates and must be adjusted. *See id.* I recommend amending the paralegal's hourly rate to $115.

Plaintiff's counsel failed to submit a detailed itemization of legal fees and costs. *See* Hawkins Aff. ¶ 14. The records Plaintiff's counsel provided merely show that the attorney and paralegal billed a total of 2.7 hours. These hours are reasonable considering the amount of labor required to initiate the case, take the necessary procedural steps in moving for default judgment, and prepare sufficient evidence in support of the damages requested. Moreover, the requested costs for filing and server fees are appropriate. Applying the lodestar method and the Local Guidelines to Plaintiff's request, I recommend that the Court adjust the requested attorney's fees and costs to reflect an award of $1,093.50.

### f) Order Requiring Audit

In addition to monetary damages, Plaintiff requests that the Court grant injunctive relief in the form of an order requiring Defendant submit to an audit for the year 2011. Under ERISA, the court has discretionary authority to grant injunctive relief when doing so is necessary to protect the rights of fund participants and beneficiaries. *Trustees of Washington Area Carpenters' Pension & Ret. Fund,* 743 F. Supp. at 428; *see Laborers' Fringe Benefit Funds,* 640 F.2d 1350; *see* 29 U.S.C. § 1132(a)(3). A plaintiff requesting injunctive relief must show that it is in need of injunctive or "other appropriate equitable relief" to remedy the breach, and that adequate remedy is otherwise unavailable. *Phillips*, 632 F. Supp. 2d at 575.

Plaintiff has demonstrated the requisite need for equitable relief. Defendant failed to provide records for 2011 sufficient for Plaintiff to conduct an audit and has been wholly unresponsive to Plaintiff's requests for the documents. Injunctive relief is necessary to ensure Plaintiff obtains the records so that it may calculate the remainder of Defendant's outstanding payments to the NEBF. After reviewing the evidence of record, it is my recommendation that

the Court grant Plaintiff's request for injunctive relief and issue an order requiring Defendant to produce its records from 2011, so that the NEBF may determine any remaining delinquency in contribution payments.

g) *Request for Maintained Jurisdiction*

Plaintiff requests that the Court retain jurisdiction over this matter for the purpose of entering an award in favor of the NEBF with respect to any contributions and related amounts due for 2011 once it completes the audit.  Loughran Aff. ¶ 10.  It is my recommendation that the Court grant Plaintiff's request for maintained jurisdiction for this limited purpose in order to maximize efficiency and judicial resources.

**IV.     Conclusion**

Based on the foregoing, it is my recommendation that the Court GRANT Plaintiff's Motion for Default Judgment and enter judgment in favor of Plaintiff as enumerated above in the total amount of $12,505.68.


July 11, 2014                                                       _____/s/_____
                                                                          Charles B. Day
                                                                          United States Magistrate Judge

CBD/slr/ktl